# STATEMENT OF FACTS

### March 1, 2025, Incident

1. On Saturday, March 1, 2025, at 1523 hours, officers with the Metropolitan Police Department ("MPD")'s Sixth District responded to the 300 block of 50 Street NE, Washington, D.C., which is in the Lincoln Heights neighborhood, after receiving a detection of 14 rounds of automatic gunfire. Once on the scene, the MPD officers located fourteen (14) .40 caliber shell casings. No victims were located. The responding officers did not observe any destruction of property. Based on MPD officers' observation of recovered video footage of the incident, two shooters fired a firearm from a black Infiniti bearing a Maryland rear license plate ("Suspect Vehicle-1"). One of the shooters was located in the front driver's side, and the other shooter was located in the front passenger side of Suspect Vehicle-1. Immediately after firing the fourteen (14) rounds, Suspect Vehicle-1 fled from the Lincoln Heights neighborhood. Suspect Vehicle-1 was last seen traveling eastbound in the 5300 block of Nannie Helen Burroughs Avenue NE.

2. MPD identified Suspect Vehicle-1 as a 2021 black in color Infiniti Q50 bearing Maryland registration 9GB1766. Suspect Vehicle-1 was later reported stolen out of Prince George's County, Maryland on March 4, 2025. Suspect Vehicle-1 was entered into WALES as a stolen vehicle. Additionally, based on MPD's investigation, Suspect Vehicle-1 was also entered into WALES as a felony vehicle related to the non-contact shooting incident on March 1, 2025. Shortly thereafter, a be on the lookout ("BOLO") was distributed to members of the MPD for Suspect Vehicle-1.

### March 8, 2025, Incident

3. On Saturday, March 8, 2025, around 1800 hours, officers with the MPD's Robbery Suppression Unit ("RSU") were working an evening tour of duty in and around the intersection of 60th Street NE and Eads Street NE, Washington, D.C. The officers were dressed in plainclothes with police outer vests and were utilizing unmarked police cruisers. All members were wearing police body worn cameras.

4. Shortly after 1810 hours, MPD officers observed a black in color Infiniti Q50 ("Suspect Vehicle-2") that matched the description of Suspect Vehicle-1 traveling near the area of 60 Street NE and Eads Street NE. Suspect Vehicle-2 was bearing Tennessee rear license plate 186SF0 with a plastic cover. MPD officers observed Suspect Vehicle-2 at the intersection of 60th Street NE and Eads Street NE, which is just over one mile from the location of the March 1, 2025, shooting incident that occurred at 300 50th Street NE. Based upon a WALES query, Suspect Vehicle-2's license plate is listed to a 2011 Audi that expired in July 2024. Based on Suspect Vehicle-2 matching the description of Suspect Vehicle-1, Suspect Vehicle-2's proximity to the area of the March 1, 2025, shooting incident, and Suspect Vehicle-2's plates retuning as expired to a 2011 Audi, MPD officers recognized that Suspect Vehicle-2 may be the same vehicle as Suspect Vehicle-1. MPD officers then requested the support of the MPD's Air Support Unit, Falcon.

5. MPD Sergeant Possinger, Sergeant Wershbale, and Lieutenant Steen were following Suspect Vehicle-2 and observed it turn onto East Capitol Street NE heading westbound

from 49th Street NE. As Suspect Vehicle-2 approached the heavily congested intersection of East Capitol Street NE and Benning Road NE, Washington, D.C., and began to experience traffic, the MPD officers observed the front driver's door and front passenger's door of Suspect Vehicle-2 open.

6. After the front doors to Suspect Vehicle-2 opened, Sergeant Possinger observed the Defendant, later identified as Floyd Clark, exit the front driver's seat of Suspect Vehicle-2. At this time, Sergeant Possinger was in a police vehicle a few cars behind Suspect Vehicle-2. When the Defendant exited Suspect Vehicle-2, the Defendant turned and looked towards Sergeant Possinger's vehicle, and Sergeant Possinger observed the Defendant's face. Nothing was obstructing Sergeant Possinger's view of the Defendant's face; it was still daylight outside. After exiting the vehicle, the Defendant ran across a grass median dividing traffic and towards the Benco Shopping Center located at 4520 Benning Road SE. An image of East Capitol Street NE and the grass median is depicted below. In that image, the sign for the Benco Shopping center is circled. At the same time that the Defendant exited the driver's side of Suspect Vehicle-2, a second male exited from the front passenger seat of the vehicle. The second male ran in a different direction than the Defendant.



**Image 1: Sergeant Possinger Exiting His Vehicle on East Capitol Street NE**

7. As the Defendant was running across the grass median towards the Benco Shopping Center, Sergeant Possinger pulled his vehicle closer to the Suspect Vehicle so that other officers in the car could pursue the passenger. During that time, Sergeant Possinger lost sight of the Defendant, but knew the Defendant had run toward the Benco Shopping Center based on observation moments prior. Sergeant Possinger then exited his vehicle and ran across the grass median and into the Benco Shopping Center. The Benco Shopping Center is an uncovered parking lot with shops along one end, as seen in the images below. Due to Sergeant Possinger's proximity to the Defendant, Sergeant Possinger believed the Defendant had to be in the vicinity of the shopping center, including the stores and/or parking lot.

 

**Images 2 and 3: Benco Shopping Center**

8. As Sergeant Possinger entered the shopping center, he asked bystanders, "Where'd he go?" Sergeant Possinger then stated over his radio, "He's in the Benco lot, somewhere in the Benco lot." As Sergeant Possinger continued to look for the Defendant, he stated, "He might have gone in one of these stores." Sergeant Possinger then looked under cars to see if the Defendant was hiding under a car, but did not observe the Defendant. Moments later, a bystander told Sergeant Possinger that the Defendant was inside of the Dollar Plus Store located within the Benco shopping center.

9. MPD officers then went towards the Dollar Plus Store and opened the front door to search for the Defendant. When the officers opened the door, the employees exited from the store and stated that the Defendant was in the back of the store. After ordering all of the patrons to exit the store, MPD officers gave loud verbal commands for the Defendant to exit the store and surrender. Moments later, Defendant Clark exited the store with his hands up and was taken into custody. Sergeant Possinger then confirmed that the individual who exited the store with his hands up was the same individual that Sergeant Possinger observed exiting from the front driver's seat of Suspect Vehicle-2. Once in custody, Defendant Clark identified himself to an MPD officer as "Floyd Clark" and provided his date of birth.

10. The second male that exited from the front passenger seat of Suspect Vehicle-2 was last observed running towards the Benning Road Metro Station. MPD officers were not able to stop or locate that individual. While canvassing that individual's flight path, MPD officers located a firearm on the sidewalk, several yards from Suspect Vehicle-2 and within the unknown subject's flight path, as shown below.

3



**Image 4: Firearm located on sidewalk**

11.     Once Defendant Clark was detained, an MPD officer conducted a WALES query of the VIN for Suspect Vehicle-2 and confirmed that Suspect Vehicle-2 was the same vehicle as Suspect Vehicle-1 from the March 1, 2025 non-contact shooting and the same vehicle that was reported stolen out of Prince George's County, Maryland.

Search of the Vehicle and the Defendant's Person

12.     Upon observing Defendant Clark and the unidentified subject flee from the vehicle, officer secured the Suspect Vehicle. During a subsequent search of the Suspect Vehicle members located a firearm on the front driver's floorboard, resting near the brake pedal, as shown below.



**Image 5: Firearm located on front driver's floorboard of Subject Vehicle**

13.     When searching the vehicle, MPD officers also recovered a 1-ounce vial that was three-quarters filled with an amber liquid, as shown below. The vial was located in the front passenger's door of the vehicle. The amber liquid inside of the vial had an odor consistent with Phencyclidine (also known as PCP).

4


**Image 6: Vial located in front passenger's door**

14. When searching the vehicle, MPD officers also recovered a Maryland license plate with tag 9GB1766, as shown below. That tag matched the tag observed on Suspect Vehicle-1.


**Image 7: Maryland license plate located in Suspect Vehicle**

15. When searching the vehicle, MPD officers also recovered an aftermarket key fob from the center console of the vehicle. Over the past year, Sergeant Possinger has recovered numerous Infiniti vehicles where similar aftermarket key fobs were located on defendants or inside of stolen vehicles. Aftermarket key fobs, coupled with privately purchased vehicle key programmers, can reprogram vehicle keys that allow individuals to steal Infiniti vehicles without committing more commons methods of vehicle theft, like punching the ignition. Sergeant Possinger spoke with Victim-1, the registered owner of the vehicle, who confirmed that they are in possession of the keys to their Infiniti and that there are no keys outstanding. Victim-1 also reported that Defendant Clark did not have permission to operate or occupy Victim-1's Infiniti.

16. Based on the aforementioned facts and circumstances, Defendant Floyd Clark was placed under arrest and was transported to the Sixth District for criminal processing. During a search incident to arrest, investigators recovered the Defendant's cell phone and $593 in U.S. Currency.

17. MPD Investigator Guzman recovered both firearms and transported those firearms back to the Violent Crime Suppression Division for evidence processing. A technician from the District's Department of Forensic Sciences processed the firearms.

18. The handgun recovered from the front driver's floorboard of the vehicle, from which Sergeant Possinger observed Defendant Clark fleeing, was a Glock 22 .40 caliber handgun bearing serial #BGBM995 ("Firearm-1"). Firearm-1 was loaded with one round in the chamber and an additional twenty-one rounds in a twenty-two round capacity magazine. Firearm-1 was also attached with a Glock converter switch. Based on a National Integrated Ballistic Information Network ("NIBIN") check, a lead was generated associating Firearm-1 with the expended shell casings recovered from the scene of the shooting on March 1, 2025.

19. The handgun recovered from the unknown suspect's flight path was a Glock 23 .40 caliber handgun bearing serial #XML849 ("Firearm-2"). Firearm-2 was loaded with one round in the chamber and an additional twenty-one rounds in a twenty-two round capacity magazine. Firearm-2 was also attached with a Glock converter switch.

20. As described in the paragraphs above, both Firearm-1 and Firearm-2 were equipped with converter switches, which are also commonly referred to as a "giggle switch". These switches convert a traditional semi-automatic handgun into a fully automatic handgun or machine gun. Sergeant Possinger is aware that a "giggle switch" gives the shooter the ability to expel the entire magazine with just one press of the trigger.

21. A criminal history check of the Defendant revealed that he was previously convicted of Carrying a Pistol without a License in D.C. Superior Court case number 2023CF2006739. At his sentencing, the Honorable Jason Park sentenced Defendant Clark to twelve months of incarceration. As a result, at the time he possessed Firearm-1, Defendant Clark was aware that he had a prior conviction for a crime punishable by more than one year of imprisonment.

22. There are no firearm or ammunition manufacturers in the District of Columbia. Therefore, the firearm and ammunition described above necessarily traveled in interstate commerce before they were recovered in the District of Columbia.

Based on the foregoing, your affiant submits that there is probable cause to believe that on or about March 8, 2025, Defendant Clark violated 18 U.S.C. § 922(g)(1), which makes it a crime for a convicted felon to possess a firearm.

                                                                                Sergeant Scott R. Possinger
                                                                          Metropolitan Police Department

Respectfully submitted and attested to in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 by telephone on March 12, 2025.

                                                                   HONORABLE G. MICHAEL HARVEY
                                                                   UNITED STATES MAGISTRATE JUDGE